# Fred Genna, Defendant in Error, v. Continental Casualty Company, Plaintiff in Error.

## Gen. No. 16,236.

1. EVIDENCE—*when coroner's verdict competent.* A coroner's verdict as to the manner in which death resulted is competent in an action to recover upon an accident insurance policy.

2. INSURANCE—*how "immediately" as employed in an accident insurance policy is to be construed.* The word "immediately" is to be construed as a word of time, and does not mean within a reasonable time, but does mean "presently," "without any substantial interval."

Error to the Municipal Court of Chicago; the HON. GEORGE J. COWING, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed. Opinion filed February 20, 1912.

MARTIN P. CORNELIUS, for appellant; MANTON MAVERICK, of counsel.

THOMAS J. and DANIEL M. HEALY, for defendant in error.

MR. JUSTICE CLARK delivered the opinion of the court.

Fred Genna, the defendant in error, brought action against the Continental Casualty Company upon a policy of insurance issued to his father, George Genna, in his lifetime. The defendant in error was made beneficiary of the policy in case of death arising from accident under certain conditions. The particular clause of the policy upon which the suit is based is as follows:

"PART II.   SPECIFIC ACCIDENT INDEMNITY.

"If, within ninety days from the date of the accident, any one of the following losses shall result necessarily and solely from such injury as is described in Part I, the Company will pay, subject to the provisions of Parts IV, V, VI, IX, XI, and XII.

"A.   FOR LOSS OF LIFE—SAID PRINCIPAL SUM."

The principal sum mentioned was $300. Part I of the policy, which describes the character of the injury which the insured must have received in order that there may be a recovery on the policy, is as follows:

"If the insured, while the policy is in force shall receive personal bodily injury (suicide, sane or insane not included) which is effected directly and independently of all other causes through external, violent and purely accidental means and which cause at once and continuously after the accident total inability to engage in any labor or occupation the Company will pay indemnity as provided in Parts II, III, IV, V, VI, IX, XI and XII for loss resulting therefrom."

The claim of the defendant in error is that the insured, George Genna, his father, accidentally received a cut over his right eye on January 28, 1909, which resulted in erysipelas, from which he died on February 7th following. The evidence principally relied upon by the defendant in error as tending to substantiate the claim that the deceased died from accident was the verdict of a cororner's jury, in which it was found that the said George Genna came to his death on February 7, 1909, in the Cook County Hospital, from erysipelas following external violence. The verdict of

the jury then continues as follows: "From the evidence offered, the jury are of the opinion that the said violence was the result of injuries accidentally received when in the performance of his duties as janitor on January 28, 1909, in the tank room owned by Armour Packing Company." To substantiate the claim that deceased met with an accident a witness was called in rebuttal, as the record shows, who testified that on the day the accident is alleged to have occurred he saw the deceased and that the deceased had a cut over his eye.

While the verdict of the coroner's jury was undoubtedly properly admitted in evidence, we entertain grave doubts whether with the other evidence in the record it was sufficient proof of the fact that the deceased died as a result of an accident. However, in the view we take of the case, it is not necessary to determine this question.

There were submitted to the jury before whom the case was tried several interrogatories, among others the following: "Did the insured continue in his regular occupation subsequent to the 28th day of January, 1909, for two days?" The answer of the jury to this interrogatory was "yes."

In our opinion, the controlling question we are called upon to decide on this appeal is whether, if it be assumed that the death was by accident, the bodily injury was received through external, violent and purely accidental means, and caused at once and continuously after the accident total inability on the part of the insured to engage in any labor or occupation.

Our attention has been called to the following authorities: Preferred Masonic Mutual Assn. v. Jones, 60 Ill. App. 106; Williams v. Preferred Mut. Acc. Assn. (Ga.), 17 S. E. 982; Letherer v. U. S. H. & A. (Mich.), 108 N. W. 491; Continental Casualty Co. v. Wade (Tex.), 105 S. W. 35; Wall v. Continental

Cas. Co. (Mo.), 86 S. W. 491; Pepper v. Order United Com. Travelers (Ky.), 69 S. W. 956; Merrill v. Travelers Acc. Co. (Wis.), 64 N. W. 1039; Laventhol v. Fidelity & Casualty (Calif.), 98 Pac. 1075; Vess v. United Benev. Soc. of America (Ga.), 47 S. E. 942. In all of these cases it appears to have been held by the court that the word "immediately" as used in the policies is to be construed in this connection as a word of time, and does not mean within a reasonable time, but "presently," "without any substantial interval." As stated in the case of Williams v. Preferred Mut. Acc. Assn., *supra;* "It often happens that considerable difficulty arises in determining whether or not a particular thing is the proximate or remote cause of an injury. To avoid this difficulty in the numerous and ever varying cases which may arise, we think the company meant it to be understood that it would not be responsible for loss of time resulting from physical injury unless it was plain and manifest that the injury directly, alone and without delay, occasioned such loss of time."

It is argued by the defendant in error that the condition related to causes where the suit was for loss of time on the part of the insured, and not to causes like the present in which death ensued. We do not think this construction is tenable. The primary purpose of the policy was to indemnify against loss of time by the insured, but only in case the insured was injured in such a manner as to be unable to perform his usual duties after the injury. The policy then provides by its second section that if the injury of the sort mentioned in the first part of the policy results in death the person mentioned as beneficiary shall receive the sum stated. The policy is not a life insurance policy, and the second part merely provides for a certain amount to be paid the beneficiary of the insured provided the insured dies of an accident of such a char-

acter as would have enabled the insured, if death had not ensued, to recover under part I of the policy.

The construction of the words "at once" and "immediately" must be the same whether the claim arises under part I or part II of the instrument.

It is asserted by the defendant in error that the case of Wall v. Continental Cas. Co., *supra,* sustains his contention. That was the case of a brakeman who was injured on the 7th day of November, and quit work on account of the injury on November 15th. The evidence showed that between those dates he was on two runs, and on the 15th entered the hospital. It further showed that on these runs he was able to do no work; that another man who was learning the duties of brakeman went along and did all of the plaintiff's work, and plaintiff paid him for it. The court held that the evidence was sufficient to justify the conclusion that complete and immediate disability followed the accident.

In the record before us it is shown that erysipelas is a disease which frequently occurs in cases where the afflicted person has received no cut or wound. One of the witnesses, a physician, testified that "a man might be the healthiest on earth and acquire erysipelas without traumatism," and his evidence was not contradicted. The verdict of the coroner's jury was that death was caused from "erysipelas following external violence," and that in the opinion of the jury "said violence was the result of injuries accidentally received when in the performance of his duties as janitor," etc.

The coroner's physician testified at the inquest, and his testimony by agreement was admitted in the case in the Municipal Court. His testimony was to the effect that in his opinion the deceaesed "came to his death from erysipelas following external violence." He did not give it as his opinion that death resulted from

an accident, or even that the accident caused the erysipelas which resulted in death.

In our opinion, the answer of the jury to the special interrogatory to the effect that the insured continued in his regular occupation for two days after the accident, is in direct conflict with its general verdict. In other words, the injury was not of such character as would have entitled the insured to recover under part I of the policy had he lived, and therefore there can properly be no recovery under part II of the policy in favor of the beneficiary.

Other defenses were interposed by plaintiff in error at the trial and are insisted upon here. They are: first, that in the application for the policy the insured falsely gave his age as 49 years, when in fact he was 61 years old; that this was done in order to deceive the plaintiff in error, under whose rules policies are not issued to persons above the age of 50 years; second, that in the application the employment of the insured was stated as that of sausage-maker, while his work was that of janitor, and that this was material because the rates were higher for those employed in the latter occupation than for those employed in the former; third, that the insured in his application warranted that he had no infirmity of mind or body or any defect in vision. The jury in answer to a special interrogatory found that the insured's sight was defective. It is unnecessary for us to discuss or determine these questions as raised because, as we view the case, no recovery on the part of the defendant in error is allowable for reasons heretofore assigned.

The judgment will be reversed.

*Judgment reversed.*